UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOKHA KHEK,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN,<br><br>　　　　Defendant. | Case No. 15-cv-03902-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 24, 32 |

## INTRODUCTION

Plaintiff Sokha Khek ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin ("Defendant"), the Acting Commissioner of the Social Security Administration ("SSA"), which denied Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for Summary Judgment. Pl.'s Mot., Dkt. No. 24; Def.'s Resp. & Mot., Dkt. No. 32. Plaintiff has not opposed Defendant's Motion. Pursuant to Civil Local Rule 16-5, the parties submit their motions on paper without oral argument. Both parties have consented to this Court's jurisdiction. Dkt. Nos. 7, 8. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court **GRANTS IN PART** Plaintiff's Motion, **GRANTS IN PART** Defendant's Motion, and **REMANDS** this case for the reasons set forth below.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

Beginning in January 2010, Plaintiff developed tenderness in her bilateral trapezius, rhomboids and bilateral delta and teres muscles, along with thoracic disc, chronic back pain, depression, anxiety, wrist pain, right palm pain, neck pain, arm pain, heartburn, and short-term memory loss. AR 383, 344, 356. On July 21, 2011, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on January 1, 2010. AR 137. According to Plaintiff's Function Report, Plaintiff needed to rest at least two times while combing her hair or brushing her teeth. AR 216. Doing anything repetitive or lifting anything more than 5 pounds aggravated her

pain. AR 218. Plaintiff indicated that when she worked in Netflix's shipping and receiving department, she was able to lift 40 pounds, do repetitive work such as scanning 400-500 discs per hour, walk more than 30 minutes, and hold the phone for more than one hour. *Id.* Plaintiff indicated she was no longer able to do any of this as of April 2012. AR 218. Despite experiencing difficulty performing daily activities due to pain, Plaintiff indicated she nonetheless was able to make simple meals, cook, clean lightly, do laundry, wash dishes with breaks, and go to the grocery store with assistance. AR 28, 78, 238.

On October 31, 2011, the SSA denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits. AR 115-118. Plaintiff subsequently filed a request for reconsideration, which the SSA denied on June 25, 2012. AR 120-124. On August 14, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 127. ALJ Christopher R. Inama conducted a hearing on September 4, 2013. AR 65-111. Plaintiff testified in person at the hearing and was represented by attorney Cynthia Starkey. *Id.* The ALJ also heard testimony from vocational expert, Ronald W. Morrell. AR 104-110.

**A.     The Medical Record**

Plaintiff's medical file spans from January 2010 through July 2013. *See* AR at 3-9.

1. <u>Treating Physicians</u>

On April 1, 2010, Plaintiff saw Dr. Thuy Thu Hoang, an internal medicine doctor, because she felt very depressed when she thought of her physical pain and she could not raise her left arm like she used to. AR 262. Upon examination, Dr. Hoang determined that Plaintiff was able to elevate her arms over her head; however, he noted multiple trigger point tenderness along the trapezius, posterior neck, and upper back regions. *Id.* On July 7, 2010, Dr. Hoang diagnosed Plaintiff with musculoskeletal pain, dyspepsia, depression, and indicated an abnormal liver function test. AR 263. Plaintiff saw an acupuncturist six times, but some pain still persisted despite the treatment. AR 270.

In addition to seeing Dr. Hoang, Plaintiff was treated at Bay Area Pain and Wellness. AR 312-21. There, on December 6, 2010, Dr. Tyson Landeza performed trigger point injections in

2

Plaintiff's trapezius. AR 316. Plaintiff saw Dr. Landeza again on February 14, 2011, and told him that she did not feel any improvement after the trigger point injections. AR 315.

On April 11, 2011, Plaintiff saw Dr. Hoang again because she was experiencing back pain, fatigue, and loss of appetite. AR 266. Dr. Hoang subsequently diagnosed Plaintiff with back pain and anxiety. *Id.* Plaintiff returned to Dr. Hoang on June 7, 2011 and was diagnosed with chronic pain syndrome/fibromyalgia and anxiety disorder. AR 267. Plaintiff rated her pain as 3 out of 10 on the pain scal; upon further examination, Dr. Hoang found multiple trigger point tenderness along Plaintiff's posterior neck, upper back, lower back, and trapezius muscle areas. AR 274. According to Dr. Hoang, Plaintiff's pain was probably psychosomatic and he diagnosed Plaintiff with situational depression. *Id.*

Plaintiff also was treated by Dr. Raj Kumar of San Jose Pacific Neurology Center. AR 334. On November 17, 2011, Dr. Kumar diagnosed Plaintiff with cervicalgia, numbness, weakness of muscles, depression, insomnia, and carpal tunnel syndrome. *Id.* A November 30, 2011 MRI of Plaintiff's cervical spine showed mild disc bulges at C3-4 and C4-5, with mild left neural foraminal encroachment at C4-5, and a slightly narrowed central canal at C3-4. AR 308. On January 11, 2012, Plaintiff told Dr. Kumar she was experiencing neck pain which radiated down her thoracic spine. *Id.* The pain was constant and she rated it as 9 out of 10 on the pain scale. *Id.* Plaintiff also reported no changes in her depression. *Id.*

Dr. Kumar referred Plaintiff to pain management specialist, Dr. Annu Navani. AR 331. Dr. Navani reviewed test results, images, and progress reports from Dr. Kumar. AR 323. After conducting a neurological/musculoskeletal exam, Dr. Navani found full range of motion and normal strength but found tender points of fibromyalgia 14/18 above and below the diaphragm. AR 323-24. Dr. Navani diagnosed Plaintiff with fibromyalgia, generalized musculoskeletal pain and deconditioned state, and cervical and lumbar radiculitis with no neurological impairment. *Id.*

Plaintiff returned to see Dr. Kumar on March 20, 2012. AR 328. After an MRI scan of Plaintiff's brain revealed a possible Chiari malformation, Plaintiff was referred to Dr. David Yeh, a neurological surgeon, to provide an opinion on Plaintiff's headaches, dizziness, and generalized

3

body ache. AR 338-40. Dr. Yeh determined that Plaintiff did not have Chiari malformation and that Plaintiff's symptoms were "more consistent with fibromyalgia." AR 340.

Plaintiff was then referred to Dr. Gang Li, a board-certified pain specialist, on January 21, 2013. AR 379. Dr. Li summarized Plaintiff's medical history and noted that she has had an extensive workup including C and T spine, MRI, EMG, and labs without significant findings. AR 387. Although Plaintiff was able to sit for 15 minutes, she had "[m]ultiple tender points [] in all quadrants of her body, 5 distinct trigger points in her right trapezius, rhomboids and paraspinal muscles at T10, 11 levels bilaterally." AR 388. Dr. Li diagnosed Plaintiff with fibromyalgia, depression, and insomnia on March 16, 2012. AR 392. Dr. Li also gave Plaintiff trigger point injections in her trapezius, supraspinatus, teres, and deltoid muscles bilaterally on August 21, 2012. AR 385. The trigger point injections only helped for two weeks, and Plaintiff reported her whole body pain was getting worse. AR 382. By October 30, 2012, the pattern and characteristic of the pain did not change. AR 382-83.

On April 9, 2013, Dr. Li corroborated a Residual Functional Capacity questionnaire completed for Plaintiff by Dr. Maliheh Massih, which indicated that Plaintiff was constantly feeling pain, had numbness and tingling in her hands and legs, and was unable to sleep. AR 413. Drs. Massih and Li opined Plaintiff was capable of performing low stress jobs, walking 15 minutes without resting or feeling severe pain, and sitting or standing for 15-20 minutes every 3-4 hours. AR 413-14. Plaintiff did, however, need to rest every hour (up to 5 times) in a regular 8-hour work day. *Id.* Plaintiff could rarely lift 10 pounds, would miss more than 4 days of work per month, and could only use her hands, fingers, and arms (including reaching overhead) 50% of the time. AR 414-15. Dr. Li's addendum to the questionnaire stated that Plaintiff could not sustain a full time job with a sit-stand option. AR 417. Dr. Li confirmed that Plaintiff's fibromyalgia was a medically determinable impairment. *Id.*

On July 10, 2013, Plaintiff saw a board-certified rheumatologist, Dr. Bruce Dreyfuss, for a chronic pain evaluation. AR 421-22. Dr. Dreyfuss found positive trigger points, bilateral gluteus, and diffuse tenderness. AR 435. On September 5, 2013, Dr. Dreyfuss diagnosed Plaintiff with

4

fibromyalgia. AR 427. Dr. Dreyfuss completed a Residual Functional Capacity questionnaire indicating that Plaintiff could rarely lift and carry less than 10 pounds, and she could rarely twist, stoop, crouch, or climb stairs. *Id.* Dr. Dreyfuss opined that Plaintiff began suffering from fibromyalgia in 2009 and that she could walk 3 blocks without pain, sit for 20 minutes, and stand for only 15 minutes at a time. AR 426-27. Dr. Dreyfuss estimated, on average, that Plaintiff would be absent from work 3 to 4 days per month. AR 427. During an 8-hour work day, Plaintiff could use her hands 25% of the time, her fingers 10% of the time, and her arms (including reaching overhead) 5% of the time. *Id.* Dr. Dreyfuss confirmed that Plaintiff's fibromyalgia was a medically determinable impairment. AR 425.

### 2. Non-Examining and Consultative Physician Opinions

Prior to being treated by Drs. Li, Dreyfuss, and Navani, Plaintiff saw Dr. Roger Wagner on October 8, 2011. AR 285-86. Dr. Wagner, a consultative physical examiner, found tenderness in Plaintiff's trapezius and cervical spine, mild tenderness over her lumbar region, and "no real tenderness over the suprascapular areas." AR 285. Dr. Wagner also noted Plaintiff had thoracic back pain and some neck pain, but no limitations in standing, walking, or sitting. *Id.* Dr. Wagner opined that Plaintiff could lift 30 pounds occasionally, 15 pounds frequently, and had no other limitations. AR 286. Plaintiff was described as having "somewhat vague pain in the neck and shoulder girdle and in the thoracic back with perhaps some radiation into the low back." AR 285. Plaintiff's only trigger points were the trapezius and lumbar region. *Id.* Plaintiff tested negative for Tinel at the wrists and "only a bit of positive findings at the elbows." *Id.* Dr. Wagner stated that he did not conduct any imaging studies which would help him determine whether there were anatomic explanations for Plaintiff's pain, and that it was unclear what caused Plaintiff's myalgia/arthralgia syndrome. *Id.*

At SSA's request, Plaintiff saw Dr. Terrini on October 15, 2011. AR 287-290. Dr. Terrini, a psychiatric evaluator, diagnosed Plaintiff with depressive disorder not otherwise specified and assessed Plaintiff with a GAF of 55. AR 289. Dr. Terrini found that Plaintiff "should be able to perform simple and repetitive tasks," and accept instruction from supervisors.

5

AR 290.  Additionally, Dr. Terrini opined Plaintiff should be able to interact appropriately with coworkers and the public; however, she might have "some trouble performing work activities on a consistent basis without special or additional instruction due to her psychiatric symptoms."  AR 290.  Dr. Terrini opined that Plaintiff should be able to maintain regular attendance in the workplace and that she was likely "moderately impaired in her ability to complete a normal workday and workweek without interruptions from [her] psychiatric condition." *Id.*  Plaintiff's ability to deal with workplace stress was moderately impaired. *Id.*  Her prognosis was considered to be "fair." *Id.*

Dr. Ernest Wong evaluated Plaintiff's file and issued a disability determination explanation for Plaintiff at the Reconsideration level on June 15, 2012.  AR 354-55.  Based on his review of the medical file, Dr. Wong found that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently.  *Id.*[1]  Plaintiff could stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday, and could frequently balance, kneel, crouch, crawl, and climb ramps/stairs.  *Id.*  Dr. Wong noted that Plaintiff had disc bulges in C3-4, C4-5, mild L neural foraminal encroachment at C4-5, and slight narrowing at C3-4.  AR 356.  Plaintiff had slight dextroscoliosis mid T-spine with no disc herniation, central canal or foraminal stenosis, and no evidence of cord compression.  *Id.*  Dr. Wong gave "great weight" to Dr. Steven Terrini's opinion, and "other" weight to Dr. Wagner's October 8, 2011 examination.  AR 354.

**B.     Plaintiff's Testimony**

On September 4, 2013, Plaintiff testified she worked as a care provider for an elderly person for 2-3 hours a day, 5 days per week.  AR 75; AR 145-152.  Plaintiff's tasks included housework, cooking, cleaning, laundering, driving the client to the doctor, preparing medication, and grocery shopping.  AR 75, 85.  Plaintiff wanted to work more hours, but her pain prevented her from doing so.  AR 80, 394.

---

[1] The Court notes Plaintiff weighs 102 pounds.  *See* AR 283.

6

### C. Vocational Expert's Testimony

Vocational expert ("VE") Ronald Morrell identified four jobs Plaintiff had described performing in her adult disability report (Exhibit 1/E, AR 156-63) and work history report (Exhibit 4/E, AR 175-86). AR 105. She had worked as an Electronics tester at Hewlett-Packard, a shipping/receiving clerk at Netflix, a service establishment attendant, and a personal attendant. *Id.* VE Morrell testified that a hypothetical individual with the limitations identified by the ALJ could perform the job of electronics tester and service establishment attendant. AR 105-109.

### D. The ALJ's Findings

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[2] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

At the first step, the ALJ must initially determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since January 1, 2010. AR 25.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20

---

[2] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

7

C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. *Id.* § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease (mild disc bulges at C3-4 and C4-5; mild left neuro-foraminal encroachment at C4-5; central canal slightly narrowed at C3-4; mid thoracic spine dextroscoliosis; with no disk herniation, central canal or foraminal stenosis, cord compression, or myelopathy), myalgia and myositis, affective disorder, and anxiety disorder (20 CFR 404.1520(c)). AR 25. The ALJ evaluated Plaintiff's fibromyalgia and found Plaintiff did not meet the criteria for diagnosing fibromyalgia; as a result, the ALJ was "unable to find fibromyalgia is a medically determinable severe impairment." AR 25-26.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals a impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii) (the "Listing of Impairments"). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 26.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. *Id.* § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are non-severe. *Id.* § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to "perform medium work, as defined in. *Id.* § 404.1567(c), except with lifting and carrying 30 pounds occasionally and 15 pounds frequently; occasional climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds, and occasional balancing, stooping, kneeling, crouching, and crawling; occasional reaching overhead and frequent lateral reaching, handling, and fingering with

8

bilateral upper extremities. Further the claimant must avoid concentrated exposure to extreme cold, vibration, and hazards (e.g. heights and machinery), and work is limited to 3-step tasks. The claimant will do best in low stress environment." AR 27.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. *Id*. § 404.1520(a)(4) (iv). Here, the ALJ determined that Plaintiff could perform past relevant work as an electronics tester and service establishment attendant (20 C.F.R. 404.1565). AR 33. The ALJ ended the analysis here and did not proceed to the fifth and final step.

On December 2, 2013, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. AR 20-34.

**E.     Plaintiff's Appeal**

The ALJ's decision became final when the Appeals Council declined to review it on June 30, 2015. AR 1-6. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On July 10, 2016, Plaintiff filed the present Motion for Summary Judgment. Dkt. No. 24. On October 3, 2016, the Commissioner filed a Cross-Motion for Summary Judgment. Dkt. No. 32.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The

9

court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**DISCUSSION**

Plaintiff argues the ALJ committed four reversible errors. First, Plaintiff argues the ALJ failed to make necessary findings as to the physical and mental demands of Plaintiff's past relevant work. Second, she argues the ALJ's finding that Plaintiff can perform her past relevant work as actually and generally performed. Third, Plaintiff contends the ALJ failed to give appropriate weight to her treating physicians. Finally, she argues the ALJ erred in failing to find that fibromyalgia was not a severe impairment at step two of the sequential analysis. The Court addresses each argument in turn.

**A.     Physical and Mental Demands**

Plaintiff argues the ALJ's findings of fact regarding Plaintiff's RFC are not based on sufficient evidence because the ALJ failed to question her about the physical and mental demands of her prior relevant work. Pl.'s Mot. at 4. She argues that in failing to do so, the ALJ violated Social Security Ruling ("SSR") 82-62, which requires the ALJ to carefully consider past work experience "to assure the available facts support a conclusion regarding the claimant's ability or

10

inability to perform the functional activities required of this work." *Id.* This argument lacks merit.

The ALJ sought testimony from VE Morrell during the hearing. *See* AR 104-110. Plaintiff's attorney began to question Plaintiff regarding the physical and mental demands of her work. But because VE Morrell had indicated Plaintiff's past work and its demands were "covered quite adequately . . . through Exhibit 4E, she goes through and does a good job in describing things[,]" the ALJ asked Plaintiff's counsel whether further questioning in this area was necessary; counsel agreed it was not. AR 74. VE Morrell later testified he had sufficient information to summarize Plaintiff's past relevant work based on (1) an adult disability report and (2) a work history report (Exhibit 4E/AR 175-86). AR 105. In her work history report, Plaintiff provided detailed information regarding her prior work, including details about the time spent walking, standing, sitting, climbing, etc. *See id.*

VE Morrell was entitled to rely on Plaintiff's own descriptions of the demands of her prior employment. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993); *see also* S.S.R. 82-62 ("[C]laimant is the primary source for vocational documentation, and statements by the claimant regarding past relevant work is generally sufficient for determining the skill level exertional demands and nonexertional demands of such work."). The ALJ, in turn, was entitled to rely on VE Morrell's testimony regarding whether an individual with Plaintiff's RFC could perform certain past relevant work. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony . . . no additional foundation is required.")

**B.  Past Relevant Work as Actually and Generally Performed**

Plaintiff notes that her prior work of electronics tester and service establishment attendant both require frequent reaching. Pl.'s Mot. at 4-5. Plaintiff argues the ALJ erred because, despite finding she could only occasionally reach overhead, the ALJ determined Plaintiff could perform these two jobs. *Id.*

The Dictionary of Occupational Titles ("DOT") states that both electronics tester and service establishment attendant require "reaching" 1/3 to 2/3 of the time. *See* DOT § 726.684-028

11

(Electronics Tester); *id.* § 369.477-014 (Service-Establishment Attendant). VE Morrell's testimony that an individual with Plaintiff's RFC could perform these two jobs (AR 104-111) does not conflict with the DOT because the DOT does not indicate what type of reaching is required by these positions, i.e., it does not indicate whether an employee must reach overhead. *Gutierrez v. Colvin*, 844 F.3d 804, 808-09 (9th Cir. 2016) ("[W]e conclude that there was no apparent or obvious conflict between the expert's testimony and the [DOT] . . . Responding to the ALJ's hypothetical question that specifically accounted for Ms. Gutierrez's limitations, the expert eliminated all jobs that would have required . . . overhead reaching with her right arm, identifying a single job she could perform despite her limitations. The ALJ was entitled to rely on the expert's experience in job placement to account for a particular job's requirements, and correctly did so here.") (internal quotation marks and citation omitted); *see Nelson v. Astrue*, 2010 WL 4286316, at *3 (N.D. Cal. Oct. 22, 2010) (finding no apparent conflict between VE's testimony and DOT where DOT did not describe with specificity the type of reaching required for position); *see also Rodriguez v. Astrue*, 2008 WL 2561961, at *2 (C.D. Cal. June 25, 2008) (no conflict with DOT because DOT is silent as to what type of reaching is required). VE Morrell's testimony thus did not conflict with the DOT, and the ALJ properly could rely on the VE's testimony that an individual with Plaintiff's RFC could perform the job of electronics tester and service establishment attendant.

**C.     Treating Physician Opinions**

Plaintiff argues the ALJ improperly weighed the opinions of her treating physicians, Dr. Gang Li and Dr. Bruce Dreyfuss. Pl.'s Mot. at 9-12. The Court agrees.

1.     <u>Treating Physicians' Opinions</u>

Drs. Li and Dreyfuss submitted disability statements to the SSA, in which they opined about Plaintiffs' limitations. *See* AR 31 (citing Exhibits 22/F and 24/F). As noted above, Dr. Li is a board-certified pain specialist, and Dr. Dreyfuss is board-certified in rheumatology.

A Social Security claimant can establish she has fibromyalgia only by providing evidence from a licensed physician. S.S.R. 12-2p, 2012 WL 3104869 at *2 (July 25, 2012). A diagnosis of fibromyalgia on its own is not sufficient; the "evidence must document that the physician

reviewed the person's medical history and conducted a physical exam." *Id.* Further, the physician must provide evidence which satisfies one of two alternate diagnostic criteria: the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia (the "1990 Criteria"), or the 2010 American College of Rheumatology Preliminary Diagnostic Criteria (the "2010 Criteria").

Under the 1990 Criteria, the evidence must show: (1) "a history of widespread pain . . . that has persisted . . . for at least 3 months;" (2) at least 11 positive tender points, found both bilaterally and above and below the waist; and (3) evidence that other disorders which could cause the symptoms were excluded. S.S.R. 12-2Pat *3. Under the 2010 Criteria, the evidence must show: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome;" and (3) evidence that other disorders which could cause the symptoms were excluded. *Id.* The 2010 Criteria require a physician to rule out other potential conditions before making a diagnosis of fibromyalgia.

Several physicians examined Plaintiff, reviewed her medical history, and had her submit to various tests to rule out other conditions before diagnosing Plaintiff with fibromyalgia. *See supra.* A nerve conduction study was normal. AR 366-67. Dr. Kumar prescribed MRI and laboratory tests. AR 330. The labs were normal. *Id.* A brain MRI revealed possible organic causes for Plaintiffs' symptoms, but Dr. Yeh concluded Plaintiff's symptoms were more consistent with fibromyalgia than Chiari I malformation, and recommended Plaintiff consult with a pain management specialist and a rheumatologist. AR 311, 340. Dr. Navani diagnosed Plaintiff with fibromyalgia as well as cervical and lumbar radiculitis. AR 324. Dr. Li continued to treat Plaintiff with medication and trigger point injections. When Dr. Dreyfuss began treating Plaintiff in 2013, he also prescribed a number of procedures to rule out other diagnoses and also diagnosed Plaintiff with fibromyalgia. AR 398, 435.

Drs. Li and Dreyfuss completed questionnaires in connection with Plaintiff's application for disability benefits. Dr. Li opined that Plaintiff's pain symptoms would "constantly" interfere

with her ability to perform even simple tasks, and that Plaintiff would miss more than four days of work per month. AR 413-15. Dr. Dreyfuss opined Plaintiff could sit, stand, and walk for a total of only three hours during the workday, could only rarely lift even less than 10 pounds, and would miss about four days of work per month. AR 426-27.

The ALJ compared the treating physicians' opinions to both the array of routine and conservative medical evidence of record and Plaintiff's ability to perform daily living activities. AR 30-31. The ALJ rejected the treating physicians' opinions because he found they were not consistent with the entire evidence of record. AR 31. The ALJ also rejected the treaters' opinions because they were primarily based on Plaintiff's subjective complaints, which the ALJ found not entirely credible. AR 29. The ALJ relied instead on the opinion of Dr. Wagner, an SSA consultant who had examined Plaintiff in October 2011—before Plaintiff began treatment with Drs. Li and Dreyfuss, and before Drs. Navani, Li, and Dreyfuss diagnosed Plaintiff with fibromyalgia. AR 31 (citing Exhibit 4/F). The Dr. Wagner thus did not have any of the results of the tests Drs. Li and Dreyfuss ordered, their treatment notes, or their diagnoses. The ALJ does not explain why he gave such weight to Dr. Wagner's opinions. *See* AR 31.

The ALJ also gave great weight to the opinions of non-examining medical consultants on initial review and reconsideration. *See id.* (citing Exhibits 7/F and 15/F). The non-examining medical consultants' opinions predated Plaintiff's treatment with Drs. Li and Dreyfuss, and Dr. Navani's diagnosis: they completed the initial review on October 25, 2011 (AR 306), and the review on reconsideration on June 23, 2012 (AR 361). The non-treaters opined Plaintiff did not have limitations as severe as those identified by Plaintiff's treaters. Again, the ALJ failed to explain why he gave great weight to the opinions of these non-examining consultants.

2.  Standards Evaluating Medical Opinions

Physicians may render medical opinions, or they may "render opinions on the ultimate issue of disability—the claimant's ability to perform work." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.

14

2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)).

In order to reject the "uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quotation and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "The ALJ must do more than offer [] conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citation omitted).

An ALJ errs when he or she does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). In other words, it is error for an ALJ not to offer a substantive basis before assigning little weight to the medical opinion. *See id.* Generally, the SSA will give greater weight to an opinion that is more consistent with the record as a whole. 20 C.F.R. § 416.927(c)(4).

### 3. The ALJ's Evaluation of Medical Opinions

The ALJ did not offer specific, legitimate reasons for crediting Dr. Wagner's and the non-examining SSA consultants' opinions over those of Plaintiff's treating physicians. As an initial matter, the ALJ only identified conflicting evidence without "stating his interpretation" of the conflicting evidence, or explaining why his interpretations were correct. *See* AR 31. This was error. *See Ryan*, 528 F.3d at 1198; *Reddick*, 157 F.3d at 725; *Orn*, 495 F.3d at 632; *Long v. Colvin*, 2015 WL 971198, at *5 (N.D. Cal. Mar. 3, 2015) (finding that the ALJ committed reversible error for failing to set forth "specific legitimate reasons for crediting one medical opinion over another[.]" (citation omitted)).

In addition, the ALJ failed to fulfill his special duty to "fully and fairly develop the record

15

and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (internal quotation marks omitted). The ALJ rejected the treaters' opinions because they were "not consistent with the entire evidence of record" (AR 31), but he also failed to appreciate the nature of fibromyalgia and the fact the treaters' diagnoses and opinions were built upon Plaintiff's prior medical records and diagnosed fibromyalgia by elimination.

In *Benecke v. Barnhart*, the Ninth Circuit held "the ALJ erred in discounting the opinions of the plaintiff's treating physicians, relying on his disbelief of the plaintiff's symptom testimony as well as his misunderstanding of fibromyalgia. The ALJ erred by effectively requir[ing] 'objective' evidence for a disease that eludes such measurement." 379 F.3d 587, 594 (9th Cir. 2004) (internal quotation marks and citation omitted). The plaintiff's three treating rheumatologists diagnosed her with fibromyalgia, and the plaintiff consistently reported "severe fibromyalgia symptoms both before and after diagnosis, and much of her medical record substantially pre-dates her disability application." *Id.* "Sheer disbelief is no substitute for substantial evidence." *Id*.

Every specialist who treated Plaintiff in the years preceding the ALJ's opinion diagnosed her with fibromyalgia; only the SSA examiner and the non-examining consultant who had reviewed Plaintiff's earlier records reached a different conclusion. The ALJ chose to discredit, without explanation, the three specialists' opinions and instead gave great weight to the opinions of non-treating (and non-examining) physicians who did not have access to the medical records the Plaintiffs' treaters developed in 2012 and 2013. To the extent he believed the later-acquired evidence was ambiguous, the ALJ should have conducted an appropriate inquiry. *See Smolen*, 80 F.3d at 1288. At a minimum, the ALJ should have required an SSA consultant to review the new medical records and/or to reexamine Plaintiff. *See, e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

**D.     Severe Impairment of Fibromyalgia**

The ALJ evaluated whether Plaintiff met the Listing for fibromyalgia at Step 2 of the evaluation under both the 1990 Criteria and the 2010 Criteria. *See* AR 25-26. The ALJ

16

determined that Plaintiff did not meet either Criteria. *See id.* The ALJ cited Dr. Navani's diagnosis and Dr. Dreyfuss' treatment notes as support for his assessment that Plaintiff's physical examinations were generally unremarkable, and thus did not support finding Plaintiff had fibromyalgia. *See* AR 26 (citing Exhibits 10/F, 21/F, and 25/F). The ALJ did not attempt to reconcile the three treating experts' fibromyalgia diagnoses with his conclusion Plaintiff did not. To the extent the ALJ believed these diagnoses were ambiguous, it was his "special duty" to develop the record. If the ALJ found Drs. Dreyfuss, Li, and Navani did not sufficiently document the basis for their diagnoses, the ALJ should have supplemented the record. *See Smolen*, 80 F.3d at 1288. To the extent the ALJ believed the record was sufficiently developed, the ALJ should have given specific and legitimate reasons for rejecting the treating experts' opinions.

## CONCLUSION

For the reasons stated above, the Court finds that the ALJ erred in (1) failing to give specific and legitimate reasons for crediting the opinions of SSA consultants over that of Plaintiff's treating physicians; and (2) failing to develop the record with respect to Plaintiff's fibromyalgia diagnoses. The Court accordingly grants Plaintiff's Motion in part and grants Defendant's Motion in part.

The decision whether to remand for further proceedings is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 (decision whether to remand for further proceedings turns upon their likely utility). However, where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* Here, as set out above, outstanding

issues remain before a finding of disability can be made.  Accordingly, remand is appropriate.

**IT IS SO ORDERED.**

Dated: February 8, 2017

MARIA-ELENA JAMES
United States Magistrate Judge

18